YOUNG et al., Appellants, et al.

v.

LINDEN et al.; First Financial Insurance Company et al., Appellees.

[Cite as *Young v. Linden* (1998), 130 Ohio App.3d 1.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 73153, 73619.

Decided Sept. 14, 1998.

2

*Marlene N. Lally,* for appellants.

*Christopher R. Fortunato,* for appellee Annette M. Linden.

*Michelle J. Sheehan* and *Brian D. Sullivan,* for appellee First Financial Insurance Company.

*Mazanec, Raskin & Ryder* and *Thomas S. Mazanec,* for appellees Deskins, Inc. et al.

BLACKMON, Administrative Judge.

John and Donna Young appeal a decision by the trial court in favor of appellees Annette M. Linden, D&S Demolition, and First Financial Insurance Company in their wrongful demolition action. The Youngs assign the following two errors for our review:

"I. The trial court erred in granting defendant D&S Demolition and Excavating Co.'s motion for summary judgment.

"II. The trial court erred in granting defendant First Financial Insurance Company's motion for summary judgment."

Having reviewed the record and the legal arguments of the parties, we affirm the judgment of the trial court in part and reverse it in part. The apposite facts follow.

John and Donna Young were owners of a commercial building located at 5401–5403 Broadway Avenue. The building was the subject of a foreclosure auction to collect unpaid back taxes. The building was sold at a judicial auction on May 3, 1993. The high bidder at the sale was Annette Linden. The sale was confirmed by the trial court on May 24, 1993. On or about May 24, 1993, the building was razed by D&S Demolition at the request of Dennis Althar, Annette Linden's stepfather.

The lot was paved over and converted into a commercial parking lot. A sign was posted designating the lot as parking for several nearby businesses—Electronic Surplus, Inc., the Cleveland Public Library, C&R Automotive, Inc., and the Broadway School of Music.

On April 26, 1994, the trial court vacated the confirmation of the sale of the property when the Youngs' mortgage company alleged that it did not receive notification from the county about the foreclosure sale. The trial court also vacated the sale of the property on February 21, 1995. On February 21, 1995, the court redeemed the property to the Youngs and returned the purchase price to Linden. Linden relinquished possession of the property to the Youngs. The property was never deeded to Linden and/or Althar.

On May 22, 1995, the Youngs, D.D. & Y., Inc., d.b.a. Del's Place, and A Better Choice of Music Company filed a complaint against Annette Linden, Dennis Althar, Dennis Althar, d.b.a. All Tronics Renovation and Construction Company, Dennis Althar, d.b.a. All Tronics Restoration and Construction Company, Gloria Althar, Gloria Althar, d.b.a. All Tronics Renovation and Construction Company, Gloria Althar, d.b.a. All Tronics Restoration and Construction Company, Cleveland Public Library, C&R Auto, Broadway School of Music, Electronic Surplus,

4

D&S Demolition & Excavating Company, and First Financial Insurance Company.

The plaintiffs eventually dismissed their claims against the Althars and their corporations, Linden, C&R Auto, Broadway School of Music, and Electronic Surplus.[1] Summary judgment was granted in favor of Cleveland Public Library, D&S Demolition, and First Financial Insurance Company. In this appeal, the Youngs challenge the summary judgments entered in favor of D&S Demolition and First Financial Insurance Company.

Summary judgment may be granted only if no genuine issue of material fact exists. Civ.R. 56(C). Our standard of review for summary judgment is the same as that of the trial court. Consequently, we review cases *de novo*. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158, citing *Midwest Specialties, Inc. v. Firestone Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413. In applying the *de novo* standard, we review the trial court's decision independently and without deference to the trial court's determination. *Brown* at 711, 622 N.E.2d at 1157–1158.

Summary judgment is appropriate when the following factors have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Brown, supra,* citing *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884. See, also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352, 353–354.

The burden of showing no genuine issue as to any material of fact is on the party who requested the summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264, 274–275 citing *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, citing *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 519–520, 26 O.O.2d 206, 207, 196 N.E.2d 781, 783–784. However, the nonmoving party has the initial burden of showing a genuine issue of material fact for trial. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. See *Dresher v. Burt, supra* 75 Ohio St.3d at 295, 662 N.E.2d at 275, limiting paragraph three of the syllabus of *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. An issue is genuine only if the evidence is such that a reasonable

---

1. Linden, Dennis Althar and Gloria Althar agreed to pay the Youngs a total of $65,000 to settle the claims against them.

jury could find for the nonmovant. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212.

In their first assignment of error, the Youngs argue that the trial court erred in granting summary judgment in favor of D&S Demolition on the Youngs' claims for negligence, trespass, malicious vandalism, conversion, and ejectment. In their complaint, the Youngs alleged D&S Demolition wrongfully demolished the building and denied them the free peaceable use of their property since May 24, 1993. They alleged that the cost of restoring the building was in excess of $500,000, that the fair and reasonable rental value of the building was in excess of $2,000 per month, and that the replacement value of the building was in excess of $75,000. The Youngs alleged that the building contained personal property belonging to the Youngs, D.D. & Y, Inc., and A Better Choice of Music Company, which was valued in excess of $94,500.

In its motion for summary judgment, D&S Demolition ("D&S") alleged that it complied with all necessary procedures to obtain the demolition permit and was unaware that Dennis Althar was not the true and legal owner of the property. It also argued that it had no duty to independently determine who owned the property. In support of its argument, D&S cited *Shimola v. H.B. Lockhart Const. Co.* (June 5, 1986), Cuyahoga App. No. 50693, unreported, 1986 WL 6365. In *Shimola,* a property owner filed a trespass action against a contractor after the contractor trespassed on the plaintiff's land while working on a public contract. We found there was insufficient evidence of malice to support a claim for punitive damages where the contractor obtained written and verbal assurances from city officials that a valid easement had been obtained for working on the plaintiff's property.

The case before us is different from *Shimola* in that D&S produced no evidence, other than its self-serving statements, that city officials told company representatives that Althar owned the property. Though D&S claims it was told by "responsible city officials" that Althar owned the property, D&S owner Robert Deskins failed to name the sources of that information. At his deposition, when asked who told him that Althar owned the property, Deskins replied, "[T]he City of Cleveland entities, and I don't know who they would have been specifically."

Also, there was no written representation from the city that Althar owned the property. D&S's attempt to use the demolition permit as written evidence from the city that Althar owned the property must be rejected. At deposition, Deskins also admitted that he did not know who applied for the demolition permit and did not know how the building's owner was determined for the purpose of the

permit.[2] Under the circumstances, D&S's reliance on the permit as evidence that Althar owned the building cannot be held to have been reasonable. Accordingly, *Shimola* is inapposite.

We conclude that D&S had an obligation to verify ownership of the property before demolishing it. Such a responsibility has been imposed upon contractors even in cases where the building destroyed has been administratively determined to be a nuisance:

"[Even a person] who destroys or injures private property in abating what legislative or administrative officials have determined to be a public nuisance does so at his peril, where there has been neither a previous judicial determination that such supposed nuisance is a public nuisance nor even an opportunity provided to the owner for an administrative hearing (with a judicial review thereof) on the question as to whether there is a public nuisance." *Solly v. Toledo* (1966), 7 Ohio St.2d 16, 19, 36 O.O.2d 9, 11, 218 N.E.2d 463, 466.

We see no reason to excuse the contractor from its duty to verify its authority to demolish, particularly where there was no administrative determination that a building was a nuisance. Clearly, an owner must be notified before a building is demolished and D&S could not and did not meet this obligation because it had no reliable information about who the owner of the building was. By destroying the building without verifying its ownership, D&S assumed the risk that it would be subject to a wrongful demolition action. The Youngs' first assignment of error is well taken.

In their second assignment of error, the Youngs argue that the trial court erred in granting summary judgment in favor of First Financial Insurance Company ("First Financial") on the Youngs' claim for $56,000 in contractual damages due to First Financial's denial of their insurance claim for vandalism and vehicular damage. In their complaint, the Youngs alleged that the damage to the building was covered under one of the following two policy provisions listing Covered Causes of Loss:

"**Aircraft or Vehicles**, meaning only physical contact of an aircraft, a space-craft, a self-propelled missile, a vehicle or an object thrown up by a vehicle with the described property or with the building or structure containing the described property."

"**Vandalism**, meaning willful and malicious damage to, or destruction of, the described property."

---

2. In this case, Althar stated in his deposition that he applied for the permit and submitted the information contained thereon.

In its motion for summary judgment, First Financial alleged that the claim was denied pursuant to a policy provision that excluded coverage for loss or damage caused by vandalism if the building had been vacant or unoccupied for more than thirty days and excluded coverage for loss or damage caused by any other covered cause of loss if the building had been vacant or unoccupied for more than sixty days. During his deposition, John Young admitted that the building had not been used as a tavern for "about a year or two" before it was demolished and that its liquor license had been revoked. He also stated that the building was used for the storage of equipment but nothing else.

The Youngs' policy with First Financial included the following provisions:

"(8) Vacancy

"We will not pay for any loss or damage if the building where loss or damage occurs has been 'vacant' or 'unoccupied' for more than:

"a.   30 consecutive days before that loss or damage if caused by vandalism (if it is Covered Cause of Loss); or

"b.   60 consecutive days before that loss or damage is caused by any other Covered Cause of Loss;

"whether or not such vacancy or unoccupancy begins before the inception of this policy. But we will pay if the building is 'unoccupied' due to circumstances that are usual or incidental to the described occupancy."

The policy defined "unoccupied" as "containing contents pertaining to the occupancy of the building while operations or other customary activities are suspended."

The insurance policy described the business as a "tavern." By Young's own admission, the building had not been operated as a tavern for "a year or two" before it was demolished. Because the building contained items pertaining to its former use as a tavern, it was "unoccupied" as that term was defined by the policy. Young admitted that the building had been used for nothing other than storage since he stopped operating it as a tavern. Because the evidence showed that the building had been unoccupied for more than sixty days prior to the date of loss, coverage was excluded under the terms of the policy, regardless of the covered cause of loss. Accordingly, we overrule the Youngs' second assignment of error.

Having found that the Youngs' first assignment of error is well taken, we reverse the trial court's grant of summary judgment in favor of D&S Demolition and remand that cause to the trial court for further proceedings. The summary judgment in favor of First Financial Insurance Company is hereby affirmed.

8

The judgment of the trial court is affirmed in part, reversed in part and cause remanded.

*Judgment accordingly.*

DYKE and O'DONNELL, JJ., concur.