OPINION
This appeal is taken from a final judgment of the Portage County Court of Common Pleas. Appellants, Janic, Inc. and John Hoffman, appeal from the trial court's order imposing liability on them for the cost associated with the closure of a landfill.
The litigation giving rise to the instant appeal was commenced on June 25, 1987. On that date, the State of Ohio, through the Attorney General and upon the request of the Director of Environmental Protection, instituted a civil action to enforce R.C. Chapters 3734 and 6111 and the administrative rules promulgated thereunder. The Attorney General commenced the action by filing a complaint for injunctive relief and civil penalties in the Portage County Court of Common Pleas. This complaint named ten defendants and included twenty-one claims.
The state thereafter filed an amended complaint on September 28, 1987. The complaint as amended designated a total of nine defendants and contained twenty-two claims. Among the defendants named were the Portage Landfill and Development Company ("Portage Landfill"), Waldo A. Sober, Jr. ("Sober"), Janic, Inc. ("Janic"), and John Hoffman ("Hoffman"). In the complaint, it was alleged that Portage Landfill operated a solid waste disposal facility from 1969 until 1986 located in Rootstown Township in Portage County, Ohio. Sober was the president of Portage Landfill. The complaint further alleged that Janic became the operator of the facility in November 1986 and that Hoffman was the president of that company.
In the complaint, the state asserted that the defendants were responsible for numerous violations of statutes and administrative regulations. These violations related to the operation of a solid waste disposal facility under R.C. Chapter 3734 and the control of water pollution pursuant to R.C. Chapter 6111. In addition, the state claimed that the manner in which the defendants operated the landfill constituted a public nuisance under the provisions of R.C. Chapter 3767.
As an example, the state alleged that the defendants committed a statutory violation by placing industrial waste in a location where it polluted a nearby creek and its tributaries. In another count of the complaint, the state charged that the defendants frequently left waste materials exposed at the end of the work day without applying a well-compacted layer of cover material over the waste as required by the Ohio Administrative Code.
The state included a prayer for relief at the end of the complaint. In the prayer, the state sought injunctive relief and civil penalties for the violations set forth in the complaint. The state did not request a trial by jury in the complaint.
The various defendants filed answers to the amended complaint. None of the defendants' answers had a jury demand endorsed thereon. Eventually, however, the state did file a separate jury demand on October 15, 1987, "to determine the amount of the civil penalty to be assessed as well as any other issues triable of right to a jury."
After some delay, Portage Landfill and Sober filed a motion to strike the state's jury demand on August 31, 1988. Attached to the motion was a memorandum in support of the request to strike. In this memorandum, Portage Landfill and Sober argued that there was no right to a trial by jury because the injunctive relief sought by the state was equitable in nature. They also pointed out that neither R.C. Chapter 3734 nor R.C. Chapter 6111 provided any right to a jury trial for the civil penalties associated with violations of the solid waste disposal and water pollution control laws. The state submitted a memorandum in opposition to the motion to strike.
The trial court never issued an express ruling on the motion to strike the state's jury demand. However, it is apparent by the way in which the case proceeded that the trial court determined that the issues were not appropriate for a jury trial.
This is demonstrated by the fact that the trial court issued an order of reference on June 2, 1992. In this order, the trial court referred the matter to a referee for the purpose of conducting evidentiary hearings into the allegations contained in the state's complaint. The trial court specifically directed the referee to report back to the court on two issues: (1) whether the solid waste disposal facility had been properly closed, and if had not, what would be required to achieve that objective; and (2) assuming the facility was not yet properly closed, which defendants were obligated to shut it down and bear the expense thereof.
The first hearing before the referee was held on June 3, 1992. Prior to the commencement of this proceeding, Janic and Hoffman objected on the ground that they were entitled to a jury trial.[1] By this time, the state had changed its position with respect to this issue. As a result, the state moved to withdraw its previous jury demand, thereby consenting to the authority of the referee to hear and decide the claims presented by the litigation.
The referee conducted at least seven hearings throughout the balance of 1992, and on March 15, 1993, he issued a report containing his recommendations. The parties subsequently filed objections to the referee's report.
In a judgment entry dated September 16, 1994, the trial court found that the objections filed by the parties were not well-taken. The trial court then adopted the referee's report and made the following conclusions: (1) the landfill was not yet properly closed according to law; (2) Portage Landfill, Sober, Janic, and Hoffman were responsible for the cost of closing the landfill; and (3) the closure should be carried out in the manner set forth by the referee's report. The order was interlocutory because the trial court instructed the defendants to develop a closure plan for presentment to the court, the Environmental Protection Agency, and the Portage County Combined General Health District.
The trial court issued another interlocutory entry on January 13, 1995. In this order, the trial court clarified various aspects of its prior adoption of the referee's report. The trial court also instructed the parties to submit further materials relating to the litigation.
Finally, on June 22, 1998, the trial court issued its final judgment in the case. By this time, the state had apparently reached settlements with various defendants, including Portage Landfill and Sober. As a result, the trial court's decree contained the following findings and orders: (1) the landfill was still not properly closed; (2) Janic and Hoffman were jointly and severally liable for the remaining expenses of closing the landfill; and (3) the closure had to be carried out in accordance with the relevant provisions of the Ohio Administrative Code.
From this judgment, Janic and Hoffman filed a timely notice of appeal with this court. They now proceed as appellants by asserting the following assignment of error:
 "The trial court erred when it imposed a multi-million dollar financial obligation on Appellants without a jury trial."
In their sole assignment of error, appellants contend that the trial court erred by rendering judgment without affording them the opportunity to have the case decided by a jury. We disagree.
The Ohio Constitution provides the primary guaranty of the right to trial by jury in the state courts. Pursuant to Section5, Article I of the Ohio Constitution, "[t]he right of trial by jury shall be inviolate[.]"[2] This right traces its origins to the Ohio Constitution of 1802. See Section 8, Article VIII of the Ohio Constitution of 1802.
Civ.R. 38(A) recognizes this right within the procedural rules governing the civil justice system in Ohio. Civ.R. 38(A) provides that "[t]he right to trial by jury shall be preserved to the parties inviolate." The text of Civ.R. 38(A) does not refer to the source of the right to a jury trial, but the 1970 Staff Notes do cite Section 5, Article I of the Ohio Constitution as the basis for that right.
It should be noted that Section 5, Article I of the Ohio Constitution does not list the matters for which the right to trial by jury attaches.[3] Due to the silence of the constitutional guaranty in this respect, the Supreme Court of Ohio has prescribed a historical test for determining whether the right to a jury trial exists. Specifically, the court has suggested that the controlling standard is whether the right existed under the common law prior to the adoption of the Ohio Constitution. See, e.g., State ex rel. Miller v. Anthony (1995),72 Ohio St.3d 132, 135-136; Zoppo v. Homestead Ins. Co. (1994),71 Ohio St.3d 552, 556; Sorrell v. Thevenir (1994), 69 Ohio St.3d 415,421-422; Digital Analog Design, 63 Ohio St.3d at 661-662;Mason v. State ex rel. McCoy (1898), 58 Ohio St. 30, 55. By examining the practice of Ohio courts at that time, it can be determined whether such a right should be recognized today.
Beyond examining historical practice, the Supreme Court of Ohio has also held that the right to a jury trial does not exist if the relief sought is equitable, rather than legal, in nature. See, e.g., State ex rel. Miller, 72 Ohio St.3d at 136 (holding that there is no right to a jury trial in an action to abate a nuisance because of the equitable nature of the proceeding);Digital Analog Design, 63 Ohio St.3d at 662 (holding that there is no constitutional right to a jury trial in an action for the award of attorney fees because the relief sought is equitable in nature). The presumptive basis for this distinction is that matters at law generally are triable to a jury, while matters in equity historically have been tried by the court.
While Section 5, Article I of the Ohio Constitution sets forth the basic constitutional right to a trial by jury, it is well-settled that the General Assembly may expand upon that right through the enactment of a statute. Hoops v. United Tel. Co. ofOhio (1990), 50 Ohio St.3d 97, 100 ("Where a statute sets forth a new civil right, the legislature may grant a concomitant right to jury trial, but need not do so."); Kneisley v. Lattimer-StevensCo. (1988), 40 Ohio St.3d 354, 356 ("There is no right to a jury trial * * * unless that right is extended by statute or existed at common law prior to the adoption of our state Constitution.") (Emphasis sic.); State ex rel. Kear v. Lucas Cty. Court of CommonPleas (1981), 67 Ohio St.2d 189, 191 ("With no constitutional right to a jury trial, appellant has only such right as is expressly provided by statute."). In other words, the constitutional guaranty to a civil trial by jury may not be abridged, but it may be expanded. See Gunsaullus v. Pettit
(1888), 46 Ohio St. 27, 28 ("The right may be extended, but not abridged.").
Given this background, we can now turn to the case sub judice. It is true that the state did submit a jury demand subsequent to the filing of its amended complaint. Once the jury demand was filed, Civ.R. 39(A) was triggered. It provides in part:
 "When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist."
In this case, there obviously was no waiver by stipulation of the parties pursuant to Civ.R. 39(A)(1). Indeed, appellants objected to the lack of a jury trial at the outset of the initial evidentiary hearing conducted by the referee on June 3, 1992. Thus, the state's motion to withdraw its prior jury demand could not, by itself, operate to waive the demand. See,e.g., Haddix v. Mercury Marine (July 10, 1992), Lucas App. No. L-91-270, unreported, 1992 WL 158942 (a jury demand properly made under Civ.R. 38 is not waived when the trial court grants a motion to withdraw the demand over the objection of an opposing party).
Instead, the trial court upon its own initiative found that a right to trial by jury did not exist pursuant to Civ.R. 39(A)(2). The question presented in this appeal is whether this finding was in error.
Appellants take the position that they were entitled to a jury trial on issues of fact regarding their liability for violations of R.C. Chapters 3734 and 6111. Our analysis of this question lends itself to a three-pronged inquiry: (1) Did a right to a jury trial exist upon this type of action prior to the adoption of the Ohio Constitution of 1802 which today is preserved by Section 5, Article I of the current Ohio Constitution?; (2) Was the action primarily legal or equitable in nature?; and (3) If there is no constitutional right to a jury trial for this kind of action, does a statute provide for such right?
First, it is readily apparent that a right to a jury trial did not exist upon this type of action prior to the adoption of the Ohio Constitution of 1802. Actions for the enforcement of solid waste disposal laws under R.C. Chapter 3734 and water pollution control laws under R.C. Chapter 6111 did not exist at common law. Thus, Section 5, Article I of the Ohio Constitution does not preserve a right to a jury trial for the type of action filed against appellants.
Second, the action instituted by the state was primarily equitable in nature. This is clearly evidenced by the prayer for relief included at the end of the amended complaint. It read in pertinent part:
"Wherefore, Plaintiff prays:
 "A. That this Court preliminarily and permanently enjoin Defendants to:
 "(i) Restrict or limit the amount of solid waste received at the facility to 1,000 cubic yards per day * * *.
 "(ii) Operate the facility in compliance with O.A.C. 3745-27 and 3745-37.
 "(iii) Cease placing leachate in locations where it enters any waters of the state and cease causing water pollution.
"(iv) Abate the public nuisance."
Actions for injunctive relief and for the abatement of a nuisance are suits in equity. It is uncontroverted that equitable relief falls within the province of the trial court. In actions seeking such equitable relief, there is no right to a trial by jury. Mentor v. Nozik
(Sept. 23, 1994), Lake App. No. 93-L-130, unreported, at 3, 1994 WL 613779. See, also, Ohio Bd. of Dietetics v.Brown (1993), 83 Ohio App.3d 242, 247.
The fact that the state also sought civil penalties pursuant R.C. 3734.13(C) and 6111.09 does not change our analysis. A jury trial is not automatically required even though a given defendant may incur some monetary expense as a result of the equitable relief granted by the trial court. If the demand for money is only "incidental and ancillary" to the equitable relief sought, then no trial by jury is required. Nozik, 1994 WL 613779, at 4. See, also, Murello Constr. Co. v. Citizens Home Savings Co. (1985), 29 Ohio App.3d 333, 334; Huntington Natl. Bank v. HeritageInvestment Group (1983), 12 Ohio App.3d 113, 114; Pyromatics, Inc.v. Petruziello (1983), 7 Ohio App.3d 131, 134. Such was the case in the instant appeal.
Third, and finally, appellants had no statutory right to a jury trial. As a general matter, there are two types of statutes that grant a jury trial. The first type of statute is one which sets forth a broad description of those matters which may properly be tried by a jury. The most significant example is R.C. 2311.04. It provides as follows:
 "Issues of law must be tried by the court, unless referred as provided in the Rules of Civil Procedure. Issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or unless all parties consent to a reference under the Rules of Civil Procedure.
 "All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred." (Emphasis added.)
The action filed by the state was not "for the recovery of money only, or specific real or personal property[.]" As such, R.C. 2311.04 did not grant appellants the right to a jury trial.
The second type of statute is one in which the right to a jury trial is expressly provided for by the statutory scheme which authorizes the underlying action. See, e.g., R.C. 3111.12(E) (granting the right to a jury trial in a parentage action brought pursuant to R.C. 3111.01 et seq.). In this case, a simple perusal of the two primary statutes under which the state filed its action demonstrates that neither R.C. 3734.13 nor R.C. 6111.07
contains any language that either expressly or implicitly accords the right to a trial by jury.
Thus, it is obvious that appellants were not entitled to a jury trial. They had neither a constitutional right nor a statutory right to have factual issues decided by a jury. The action instituted by the state was for the enforcement of the laws contained in R.C. Chapters 3734 and 6111. The relief sought by the state was primarily equitable in nature, and the request for the imposition of civil penalties in the complaint did not convert the action into one for the recovery of money only with the concomitant right to a trial by jury. See, e.g., Nozik, 1994 WL 613779, at 4 (wherein this court held that a request for civil penalties was incidental to the injunctive relief sought by the Ohio Environmental Protection Agency for alleged violations of R.C. Chapters 3734 and 6111).
Based on the foregoing analysis, appellants' assignment of error is meritless. Accordingly, the judgment of the trial court is affirmed.
_______________________________________
JUDGE JOSEPH DONOFRIO, Ret., Seventh Appellate District, sitting by assignment.
NADER, J., O'NEILL, J., concur.
[1] It must be remembered that the motion to strike the state's prior jury demand had been filed by other defendants in the action, to wit: Portage Landfill and Sober.
[2] The right to trial by jury in civil actions under theSeventh Amendment to the United States Constitution does not apply to state courts. Digital Analog Design Corp. v. NorthSupply Co. (1992), 63 Ohio St.3d 657, 662, fn.1, citing Minneapolis St. Louis RR. Co. v. Bombolis (1916), 241 U.S. 211,217.
[3] Likewise, Civ.R. 38(A) does not elaborate on the types of cases or issues for which the right exists.